#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF SOUTH CAROLINA
#### COLUMBIA DIVISION

| | | |
|---|---|---|
| Brandon Ray Hixon, | ) | Civil Action No.: 3:20-cv-03002-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Morning Pride Manufacturing, LLC d/b/a | ) | |
| Honeywell First Responder Products and | ) | |
| Newton Fire & Safety Equipment, Inc., d/b/a | ) | |
| Newton's Fire & Safety Equipment, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant Newton Fire & Safety Equipment, Inc., d/b/a Newton's Fire & Safety Equipment, Inc.'s ("Newton's") Motion for Summary Judgment. (ECF No. 41.) Newton's asserts that it is entitled to summary judgment because Plaintiff has failed to make a showing of the elements of negligence required to prosecute this matter and there is no genuine issue as to any material fact. For the reasons set forth below, the court **GRANTS** Newton's Motion for Summary Judgment (ECF No. 41) and **DISMISSES** this action.

##### I.     RELEVANT BACKRGOUND

This case arises from Plaintiff Brandon Hixon's ("Plaintiff") use of Morning Pride Manufacturing, LLC d/b/a Honeywell First Responder Products' ("Morning Pride") bunker gear as a firefighter with the Columbia Fire Department in Columbia, South Carolina. (ECF No. 1-1.) In October 2016, the City of Columbia issued an Invitation for Bids for the provision of eighty (80) sets of Morning Pride bunker gear, personal protective clothing worn by firefighters while battling structural fires. (ECF No. 41-2.) Newton's was awarded the contract to supply the Honeywell bunker gear, manufactured by Morning Pride, and the contract was renewed

1

consecutively for several years leading up to the time period relevant to this case. (*See* ECF No. 48-1 at 12.)

In early 2018, while attending the Columbia Fire Training Academy, Plaintiff was measured for his custom fit Morning Pride bunker gear by Newton's Vice President, Seth Newton. (ECF Nos. 41-1 at 1, 48 at 2–3.) Plaintiff received his bunker gear, consisting of a jacket, pants, and suspenders, before graduating from the academy. (ECF No. 1-1 at 5 ¶ 14.) On December 7, 2018, Plaintiff was dispatched to combat a residential structure fire. (*Id.* at 5 ¶ 15.) While inside the house and wearing his Morning Pride bunker gear, Plaintiff felt sudden, extreme heat on his legs. (*Id.*) Plaintiff continued to help manage the fire and upon exiting the structure and removing his bunker pants, discovered he had suffered severe burn injuries to both of his lower legs. (*Id.* at 6 ¶¶ 15–16.)

On July 17, 2020, Plaintiff filed this action against Morning Pride and Newton's for negligence in the Court of Common Pleas for Richland County, South Carolina. (ECF No. 1-1.) The Complaint alleges that Plaintiff's custom-tailored bunker pants were too short in length, which allowed steam to enter the bottom of his pants and burn his legs while he was in the kneeling position, and that his burn injuries were the direct and proximate result of Defendants' negligence. (*Id.* at 6 ¶ 17, 7 ¶ 21.) On August 20, 2020, Defendants removed the case to this court based on the court's diversity jurisdiction. (ECF No. 1.) Plaintiff voluntarily dismissed Morning Pride from this case without prejudice on June 10, 2021. (ECF No. 33). On August 10, 2021, Newton's filed its Motion for Summary Judgment. (ECF No. 41.) Plaintiff submitted a Response in Opposition (ECF No. 48) to which Newton's filed a Reply (ECF No. 51).

## II. JURISDICTION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a citizen and resident of Richland County, South Carolina, and Defendant Newton's is a North Carolina corporation with its principal place of business in North Carolina. (ECF No. 1 at 2–3.)

## III. LEGAL STANDARD

A.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a

jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

B.     Negligence

To support a negligence claim under South Carolina law, "a plaintiff must show that the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages." *Steinke v. S.C. Dep't of Lab., Licensing & Regul.*, 520 S.E.2d 142, 149 (S.C. 1999) (citing *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78 (S.C. 1998)).

The existence of a legal duty of care owed by the defendant to the plaintiff is an essential element for a negligence claim. *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 276 (S.C. 2003). "[S]tandard of care may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 659 (S.C. 2006). Whether a defendant breached its duty of care is a question of fact. *See Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 484 (D.S.C. 2014) (citing *Dorrell v. S.C. Dep't of Transp.*, 605 S.E.2d 12, 18 (S.C. 2004)). Proximate cause requires proof of (1) causation in fact and (2) legal cause. *Bramlette v. Charter-Med.-Columbia*, 393 S.E.2d 914, 916 (S.C. 1990). Causation in fact is shown by establishing that an injury would not have occurred "but for" the defendant's negligence, and "[l]egal cause is proved by establishing foreseeability." *Id.* Proximate cause generally is an issue of fact for the jury, to be decided as a matter of law only in "rare or exceptional cases" where "the evidence is susceptible to only one inference." *Muhler Co. v. Ply Gem Holdings, Inc.*, 637 F. App'x 746, 748 (4th Cir. 2016) (citing *Cody P. v. Bank of Am., N.A.*, 720 S.E.2d 473, 478–79 (S.C. Ct. App. 2011)).

4

## IV.     ANALYSIS

A.     <u>Newton's Evidentiary Objections</u>

In its Reply to Plaintiff's Response (ECF No. 51), Newton's challenges the admissibility of certain photographs (ECF No. 48-9) and testimony (ECF No. 48-7) Plaintiff attached as exhibits. (ECF No. 48.)

The challenged photographs show Plaintiff wearing two (2) sets of bunker pants. Newton's contends the photographs were obtained during an improper inspection of the subject pants. The bunker pants Plaintiff was wearing when he sustained his injuries have been in the possession of the City of Columbia throughout this litigation. Counsel for Newton's inspected the bunker pants on May 21, 2021, and counsel for Morning Pride inspected the pants on May 27, 2021. (*See* ECF No. 52-3.) Subsequently, Plaintiff inspected the bunker pants on July 23, 2021, and again on August 26, 2021. (ECF No. 51 at 6.) During these inspections, Plaintiff's counsel photographed Plaintiff wearing the bunker pants at issue and his current bunker pants for comparison. Newton's contends Plaintiff did not provide notice of either inspection and that one (1) of the inspections took place after the close of discovery.[1] As such, Newton's asserts that the photographs are inadmissible and should not be considered in ruling on summary judgment.

Next, Newton's objects to the testimony of Columbia Fire Department Captain David Meier, presented through an affidavit attached to Plaintiff's Response. (ECF No. 48-7.) Captain Meier was Plaintiff's captain at the time of the incident and was present when Plaintiff sustained

---

[1] The Scheduling Order in this case provides that discovery was to be completed by July 30, 2021, although the Order also provides that "[t]he parties may, with consent of all counsel, conduct discovery up to the time of trial, provided the deadlines in this order are not affected." (ECF No. 14 at 2.) The court notes, however, that it is unable to decipher from the record whether the subject photographs were taken at the July 23, 2021 inspection, prior to the close of discovery, or at the August 26, 2021 inspection after the discovery period ended.

his injuries. (ECF No. 48 at 4.) Captain Meier also completed the incident report regarding the injuries (ECF No. 41-5) and was listed as a witness on Plaintiff's workers' compensation report (ECF No. 48-10). Despite Captain Meier's obvious connection to the facts of the case, Plaintiff did not identify him as a witness in his Answers to Local Civil Rule 26.03 Interrogatories (ECF No. 17) or his Responses to Newton's Interrogatories (ECF No. 51-5). Plaintiff did not formally identify Captain Meier as a fact witness until he supplemented his responses to Newton's interrogatories on August 19, 2021, over a year after this action was originally filed. (ECF No. 51-1.) In the supplement to his responses, Plaintiff contends that "Captain Meier was previously identified to the parties in documents produced by former Defendant Morning Pride Manufacturing LLC and during the deposition of [] Plaintiff." (*Id.* at 3 n.1.) Plaintiff further avers that "it is clear that Defendant is aware of Captain Meier's identity and that he was present with [] Plaintiff at the residential structure fire on December 7, 2018." (*Id.*) As such, Newton's asks the court to strike Captain Meier as a witness and disregard his affidavit in ruling on Newton's Motion for Summary Judgment. (ECF No. 51 at 5.) Newton's does concede that it was aware of this witness on May 25, 2021 and in fact argues that the evidence put forth by this witness is duplicative and "has no bearing as a matter of law." (ECF No. 51 at 5.)[2] Further, if the case were to proceed

---

[2] Federal Rule of Civil Procedure 37 states that a party who fails to provide information or identify a witness, "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether a party's non-disclosure is substantially justified or harmless, the United States Court of Appeals for the Fourth Circuit has provided the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

to trial, Newton's would have the opportunity to develop any inaccuracies or bias in the photographs and the testimony during cross-examination of this witness.

As the court discusses below, neither of the challenged exhibits impact the court's ultimate finding on this motion. Upon review, the court agrees with Newton's assertion that the testimony does not provide any new facts that are legally significant. The court also agrees with Plaintiff that Newton's had prior notice that Captain Meier was a fact witness in this case and notes that Newton's had already conducted its own investigation of the subject bunker pants. As such, Plaintiff's late identification of Captain Meier does not amount to unfair surprise or prejudice to Newton's.[3] Accordingly, the court will consider this evidence in its quest to view the evidence in the light most favorable to the non-moving party.

B.     Plaintiff's Negligence Claim

   1.     *Duty*

Plaintiff appears to cite two (2) sources establishing Newton's duty: the contract between the City of Columbia and Newton's ("Bunker Gear Contract" or "Contract")[4] and Newton's voluntary undertaking to size and fit the firefighters for their protective clothing. Newton's agrees that a legal duty was created by way of contract (ECF No. 41-1 at 5), but argues that Plaintiff fails

---

*S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Although Newton's asks the court to strike this witness, it does not provide citations or arguments relevant to these factors.

[3] The purpose of Rule 26(a)'s disclosure requirements "is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Srvs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (citing *Wilkins v. Montgomery*, 751 F.3d 214, 221 (4th Cir. 2014)). Parties must provide timely supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties* during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).

[4] The terms of the Bunker Gear Contract come from the terms and conditions contained in the Invitation to Bid, the attachments thereto, and the bidder acknowledgment form. (*See* ECF No. 48-1 at 2.)

to show the elements necessary for the voluntary assumption of duty doctrine (ECF No. 51 at 6–7).[5] However, Newton's does not appear to argue that it did not undertake a duty. Instead, Newton's challenges the imposition of liability based on the voluntary undertaking doctrine. (*See* ECF No. 51 at 6–9.) Therefore, the court includes this argument in its analysis of breach and causation below.

    2. *Breach*

Newton's contends that Plaintiff has not established the specific standard of care Newton's owed and has not provided any source from which to draw such a standard. (ECF No. 41-1 at 5.) Plaintiff alleges that "by undertaking to measure and custom fit the Plaintiff for his Morning Pride bunker gear, Newton Fire, through its employee Seth Newton, assumed a duty to exercise reasonable care in the performance of those services." (ECF No. 48 at 8.) Plaintiff contends that Newton's breached its duty by failing to take proper measurements and/or provide proper sizing information for Plaintiff's bunker gear, failing to reasonably and adequately size, measure, and/or order Plaintiff's bunker pants, failing to ensure proper fit of Plaintiff's bunker pants, failing to adequately train employees engaged in measuring firefighters for custom gear, failing to comply with National Fire Protection Association ("NFPA") guidelines, and failing to exercise due care. (ECF No. 1-1 at 6–7 ¶ 20.) In support of this assertion, Plaintiff has presented evidence of the terms of the Bunker Gear Contract, Morning Pride's Turnout Gear Sizing Instructions, and Seth Newton's deposition testimony.

Under the Bunker Gear Contract, the successful vendor was "required to provide a local representative of their company to take measurements for each department employee or future

---

[5] The court notes that Newton's does not cite to any case law to support this argument or any of the arguments made in its Reply. (*See* ECF No. 51.)

employees." (ECF No. 48-2 at 5.) The Contract further defines "the minimum requirements for structural firefighter personal protective equipment (PPE) providing limited protection as defined by NFPA 1971, *Standard on Protective Ensemble for Structural Fire Fighting*, Latest Edition." (ECF No. 48-2 at 5.)[6] To "ensure a perfect fit," the Contract requires sizing to be "determined by actual measurements taken of the firefighter by a trained measurement specialist, or sizing try-ons, or both." (*Id.* at 7.)

Morning Pride's Turnout Gear Sizing Instructions ("Sizing Instructions") provides that "proper fit of turnout gear is crucial" to maximize first responder safety. (ECF No. 48-8 at 2.) For measuring inseams, the Sizing Instructions provide two (2) methods. Under the first method, the measurement specialist uses measuring tape to measure the bunker pants while the firefighter has boots on and measures the pant length one (1) inch from the floor at the sole of the shoe. (*Id.* at 16.) Under the second method, the specialist measures using sizing samples and measures the inseam length in whole inches by adding or subtracting from the inseam garments label. (*Id.* at 25.) Notably, for both methods, the Instructions also provide that "[s]lightly longer or shorter per individual preference is allowed[.]" (*Id.* at 16, 24.)

Plaintiff alleges Newton's breached the standard of care by failing to measure the bottom of Plaintiff's bunker pants to ensure the pants were one (1) inch above the ground, as required by Morning Pride's policies. (ECF No. 48 at 9.) As evidence of this, Plaintiff offers the photographs comparing the bunker pants Plaintiff was wearing when he was injured and his current set of bunker pants. Plaintiff does not, however, offer any expert testimony or other evidence showing

---

[6] In addition to NFPA 1971, the Bunker Gear Contract incorporates the latest editions of ASTM D 6193-97, *Standard Practice for Stitches and Seams*; NFPA 1500, *Standard on Fire Department Occupational Safety and Health Program*; and NFPA 1851, *Standard on Selection, Care, and Maintenance of Structural Fire Fighting Protective Ensembles*. (ECF No. 48-2 at 12.)

9

that the difference in length breached a duty of care or professional standard.  In South Carolina, expert testimony is required where the subject is beyond the common knowledge of the jury.  *Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468, 481 (S.C. 2013).  "Deciding what is within the knowledge of a lay jury and what requires expert testimony depends on the particular facts of the case, including the complexity and technical nature of the evidence to be presented and the trial judge's understanding of a lay person's knowledge." *Id.*

Whether a slight difference in the length of Plaintiff's pants or a minor deviation from the Sizing Instructions amounts to a breach of Newton's duty is not common knowledge because it requires analysis and application of industry standards.  *See, e.g.*, *Hickerson v. Yamaha Motor Corp., U.S.A.*, No. 8:13-CV-02311-JMC, 2016 WL 4367141, at *3 (D.S.C. Aug. 16, 2016), *aff'd sub nom. Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476 (4th Cir. 2018), and *aff'd sub nom. Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476 (4th Cir. 2018) ("Because the adequacy of warnings in products liability cases tend to implicate the study of human factors and other industry standards, this court agrees that expert testimony is perhaps the most appropriate form of evidence."); *Jackson v. United States*, No. 5:08-03876-MBS, 2010 WL 2228378, at *7 (D.S.C. May 28, 2010) ("[B]ecause the [health department] time line for follow-up treatment of lead poisoning is a guideline as opposed to a strict requirement, it is open to interpretation and therefore is not common knowledge.").

Although the Bunker Gear Contract provides that "[i]n the absence of comment on a particular point, industry standard shall be presumed to prevail" (ECF No. 48-2 at 5), Plaintiff has not provided expert testimony or other evidence to show the relevant industry standard or deviation therefrom.  This is especially important considering that Morning Pride's own Sizing Instructions permit deviation from the one-inch measurement based on individual preference.  (ECF No. 48-8

10

at 16, 25.) Absent expert testimony or other evidence to aid the jury in determining that Newton's breached the applicable standard of care by improperly measuring Plaintiff's bunker pants, Plaintiff has not shown the existence of an issue of material fact to survive summary judgment.

### 3. *Causation*

Even if Plaintiff put forth sufficient evidence to establish that Newton's breached a standard of care, Plaintiff has not offered evidence rising above mere speculation or conjecture to establish that the breach proximately caused his injuries. Newton's contends that Plaintiff's failure to offer expert testimony regarding a theory or mechanism of causation is fatal to his claims. (ECF No. 41-1 at 14–15.) Plaintiff contends that expert testimony is not necessary. Plaintiff is correct that "there are instances where expert testimony is not required to prove causation." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 227 F. Supp. 3d 452, 477 (D.S.C. 2017). However, when expert testimony is not relied upon to establish proximate cause, the plaintiff must present evidence that rises above mere speculation or conjecture. *Carter v. Anderson Mem'l Hosp.*, 325 S.E.2d 78, 81 (S.C. Ct. App. 1985). Plaintiff has not done so here.

Plaintiff has introduced evidence that the bunker pants he was wearing when he was injured and his current bunker pants are different lengths, and evidence that his lower legs were burned. However, Plaintiff has not provided evidence to show that his injuries would not have occurred "but for" Newton's negligence. The court observes that a lay jury would need expert assistance to determine whether the slight difference shown in the photographs was the proximate cause of Plaintiff's injuries. Plaintiff's contention as to the simplicity of the causation issue is contradicted by the testimony in the record. For example, Columbia Fire Department Chief Anthony Holloway testified that he is not qualified to determine whether bunker pants are too long or too short, nor does he know of anyone employed at the Fire Department who would be qualified to make that

determination. (ECF No. 41-12 at 6.) Chief Albert Owusu stated he could not testify to whether the length of Plaintiff's bunker pants contributed in any way to Plaintiff's injuries and that he would not be qualified to testify as to whether bunker pants are too short and more likely to allow injury. (ECF No. 41-11 at 3.) Chief Owusu further testified that, to determine whether bunker gear is safe, he would look at the instructions, but he would also "definitely call an expert." (*Id.* at 4.) If two (2) fire department chiefs cannot testify as to the appropriate length of bunker pants under relevant industry standards or whether the pants length could contribute to Plaintiff's injuries, it is unlikely that a lay jury would be able to do so without assistance from an expert.

Captain Meier's testimony is not sufficient to remedy this issue. Captain Meier's affidavit sets forth his competence to testify (ECF No. 48-7 at 1 ¶ 1) and the personal knowledge on which his statements are based (*id.* at 1–3 ¶¶ 2–19), specifically that he was present when Plaintiff sustained his injuries. The affidavit goes on to state that it is Captain Meier's "understanding that [Plaintiff] was issued a different set of bunker/turnout gear when he returned to work following his December 7, 2018 burn injury." (*Id.* at 3 ¶ 20.) The affidavit then discusses Captain Meier's observations of Plaintiff wearing the two (2) sets of bunker pants. (*Id.* at 3–4 ¶¶ 21–23.) Finally, the affidavit provides that, in Captain Meier's opinion, he believes it is necessary for his bunker gear to fit in a manner that will provide him with the most protection from exposure to external heat sources while fighting fires and that if the length of his bunker pants is closer to the sole of his boot, he will have better protection from injury. (*Id.* at 4 ¶¶ 25–26.) However, this testimony only provides Captain Meier's personal opinion as a fact witness that longer bunker pants provide better protection from injury. (ECF No. 48-7 at 4 ¶¶ 25–26.) He does not provide any basis for this belief and Plaintiff has not introduced Captain Meier as an expert witness. Plaintiff's claims

allege breach of standards particular to protective gear issued to firefighters. Such standards and practice are not self-evident and additional information is necessary to evaluate Plaintiff's claims.

On review of the parties' arguments and the evidentiary record, the court is not persuaded that it is within the common knowledge of a jury to evaluate whether Newton's breached a standard of care and, if it had, whether such a breach was the proximate cause of Plaintiff's injury. Therefore, the common knowledge exception is inapplicable to this case and expert testimony is required to establish Plaintiff's claims. Since Plaintiff has failed to proffer expert testimony sufficient to permit a jury to find in his favor, Newton's is entitled to summary judgment.

## V.     CONCLUSION

Based upon the foregoing, the court **GRANTS** Newton's Motion for Summary Judgment (ECF No. 41) and **DISMISSES** this action. As a result, Newton's Motion to Strike Expert Designation (ECF No. 40) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 28, 2022
Columbia, South Carolina